**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

The State, Respondent,

v.

Braylon Lamar Morris, Appellant.

Appellate Case No. 2023-000608

———————

Appeal From Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-366
Submitted February 3, 2026 – Filed July 15, 2026

———————

**AFFIRMED IN PART AND VACATED IN PART**

———————

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Assistant Attorney
General Tommy Evans, Jr., Senior Assistant Deputy
Attorney General Melody Jane Brown, all of Columbia;
and Solicitor Cynthia Smith Crick, of Greenville; all for
Respondent.

**PER CURIAM:** Braylon Lamar Morris appeals his convictions for murder and possession of a weapon during the commission of a violent crime, and consecutive sentences of life without parole and five years' imprisonment. We affirm the convictions and vacate the sentence for possession of a weapon during the commission of a violent crime.

## FACTS/PROCEDURAL HISTORY

Anthony Dubose, an asset protection officer at the Greer Walmart, testified he saw Jason Deck (Victim) at the front of the store on July 5, 2019. Dubose heard a gunshot and saw Victim fall to the floor. Dubose then saw Morris walk toward Victim to shoot him, but his gun jammed. After clearing his jammed gun, Morris shot Victim in the head from about a foot away, said something to his girlfriend, and ran from the store.

Hazen George witnessed the shooting while she was waiting on her husband to finish shopping at Walmart. She stated she saw "two men . . . wrestling with one another. And then . . . one shot the other." She described seeing Victim get shot twice and stated the shooter looked directly at her. She testified the shooter was wearing a red hat, white shirt, and blue jean shorts. She stated Victim was trying to get away from the shooter before he was shot.

Amanda Alderman was a Walmart cashier and witnessed the shooting. She stated Morris was at Walmart with a woman. She saw Victim approach Morris and put out his hand as if to say "he was sorry." Alderman stated she thought he was apologizing to Morris. Morris then "pulled a gun out of his pocket and shot [Victim] in the stomach." She saw Morris move toward Victim and shoot him again.

At trial, the State introduced into evidence surveillance video of the shooting. Sergeant Christopher McCalmont from the Greenville County Sheriff's Office testified that Morris was the shooter in the video and the person he detained in the parking lot of Long John Silver's immediately after the incident. In the video, Victim entered Walmart with one hand in his pocket. Morris, his girlfriend, and her son were in the self-checkout area. Morris immediately walked toward Victim and did not look back toward his girlfriend and her son. Victim removed his hand from his pocket and put his empty hands together in front of his stomach. A firearm can be seen in Morris's hand. Morris's girlfriend ran up behind Morris, toward Victim. Victim began to back up. Morris shot Victim once in his stomach, and Victim fell to the ground. Morris walked a few steps to Victim and shot him point-blank in the head. Morris immediately ran out of Walmart.

Investigator Alvin King responded to the incident and interviewed Morris in the Long John Silver's parking lot. Morris stated he knew he "went about it the wrong way, [and would] probably never see the light of day again." When questioned about the murder weapon, Morris reassured Investigator King the gun would not be found by children.

Morris testified he was acquainted with Victim and Victim's friend, Scotty Pope. His acquaintance with Pope deteriorated because of "jealousy" about a girlfriend, and then Morris argued with Victim. The defense introduced text messages from July 3, 2019, between Morris and Victim. Morris began the message string with "Death before dishonor 424 univeral logic." He texted, "so basically all y'all muthaf--kas police." Morris texted, "you police too." Victim texted, "I done told you where he's at and even though I introduce y'all I ain't responsible for what his f----- a-- does. I done my f------ part now you do yours and go f----- get him and don't be calling me no f----- 12." Morris texted, "You know where I'm at", and Victim replied "Really b, is that what you want?" Victim's last text stated, "Over Scotty." Morris testified the messages led him to believe Victim was "gonna kill me and my children."

Morris testified he went to Walmart with his girlfriend and her child on July 5. He saw Victim come into Walmart. Morris stated Victim

> had his hand in his pocket and . . . I know what he's known for and I knew his intentions so I backed up away from my children to make sure they were safe, and that's when he came and approach me. He came up to me, you know. He had a[n] arrogant attitude about you can kiss your kids goodbye and that's when I reacted with fear and shot him. Then I shot him again. Then I panicked and left. . . . I shot him twice because I wanted to make sure my children was protected . . . when I left.

Although Victim was unarmed, Morris stated he believed Victim had his hand on a gun in his pocket. Morris agreed that the video showed Victim's hands were empty and out of his pockets. Morris stated he shot Victim and then shot him again at close range while Victim lay on the floor and then "jogged" out of the store. Morris stated that he "misplaced" his firearm after he left Walmart and "couldn't recollect" where it was.

On cross-examination, the State presented Morris's testimony from a prior hearing that "Scotty Pope is a known informant for the police." The State also introduced video from Morris's bond hearing wherein he aggressively confronted Victim's father and stated Victim introduced him to Pope "so that's why he's dead." Morris continued to harass Victim's father as he left the bond hearing. The State introduced a phone call wherein Morris referred to "the mother f----- I killed" and "the murder weapon." Over objection, the trial court admitted an email wherein Morris stated "the confidential informant is still alive. If you want to help, you know what can be done."

During the charge conference, the trial court ruled it would omit the following from the self-defense jury instruction: "If the defendant is justified in defending him or herself, or others in firing the first shot, then the defendant is also justified in continuing to shoot until it is apparent that the danger or serious bodily injury has completely ended." Morris objected. Morris also requested a charge on defense of others, which the trial court declined. The jury found Morris guilty of murder and possession of a weapon during a violent crime. The trial court sentenced Morris to life imprisonment without the possibility of parole for murder and five years' imprisonment for possession of a weapon during a violent crime. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in refusing to charge the jury that if the defendant is justified in defending himself or others in firing the first shot, then he is also justified in continuing to shoot until it is apparent that the danger has completely ended?

II. Did the trial court err in refusing to charge the jury on defense of others?

III. Did the trial court err in admitting an email sent by Morris from the detention center?

IV. Did the trial court err in imposing a sentence for possession of a weapon during the commission of a violent crime?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). "In reviewing jury charges for error, this Court must consider the circuit court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Taylor*, 434 S.C. 365, 369, 862

S.E.2d 924, 927 (Ct. App. 2021) (quoting *State v. Simmons*, 384 S.C. 145, 178, 682 S.E.2d 19, 36 (Ct. App. 2009)).  "An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion."  *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (quoting *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010)).  "Moreover, '[t]o warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant.'"  *Id.* (alteration in original) (quoting *State v. Brandt*, 393 S.C. 526, 550, 713 S.E.2d 591, 603 (2011)).  "A trial judge's failure to give requested jury instructions is not prejudicial error where the instructions given afford the proper test for determining the issues."  *Brandt*, 393 S.C. at 550, 713 S.E.2d at 603.

"A trial court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error that results in prejudice to the defendant."  *State v. Cuevas*, 365 S.C. 198, 201, 616 S.E.2d 718, 720 (Ct. App. 2005).  "The appellate court should examine the record to determine whether there is any evidence to support the trial court's ruling."  *Id.*  "If there is any evidence in the record, the appellate court should affirm."  *Id.*

## LAW/ANALYSIS

### A.  Jury Charge

### 1.  "Continuing to Shoot" Charge

Morris argues the trial court erred in refusing to charge the jury that "[i]f the defendant is justified in defending him or herself, or others in firing the first shot, then the defendant is also justified in continuing to shoot until it is apparent that the danger of serious bodily injury has completely ended."  Morris argues the jury did not receive instruction that such force could be used in the defense of others and by a defendant who reasonably believed he was in danger instead of one who actually was in danger.  We disagree.

The trial court stated it removed the "continuing to shoot" language from the self-defense jury charge based on *State v. Marin*, 415 S.C. 475, 783 S.E.2d 808 (2016).  The *Marin* court stated the jury charge before it was a "thorough and comprehensive self-defense charge" and noted that "[w]hile the 'continuing to shoot' charge may have been appropriate, its absence does not mandate reversal. The essence of the charge was encompassed in the jury instructions . . . ."  *Id.* at 483, 783 S.E.2d at 813.  The *Marin* court stated the instruction that "a person may

use such force as is reasonably necessary even to the point of taking human life where such is reasonable" was sufficient. *Id.*

> In order to establish self-defense in South Carolina, the following four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, a reasonably prudent person of ordinary firmness and courage would have entertained the same belief that he was actually in imminent danger and the circumstances were such as would warrant a person of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or loss of his own life; and (4) the defendant had no other probable means of avoiding the danger.

*State v. Wigington*, 375 S.C. 25, 31, 649 S.E.2d 185, 188 (Ct. App. 2007).

Here, the self-defense charge adequately covered the above elements. *See Brandt*, 393 S.C. at 549, 713 S.E.2d at 603 ("A jury charge which is substantially correct and covers the law does not require reversal."). The trial court told the jury that Morris "had the right to act on appearances even though the appearance – the defendant's belief may have been mistaken." The trial court stated the amount of permissible force is not

> limited to the degree or amount of force used by the victim. The defendant has the right to use as much force as appear[s] to be necessary for complete protection in which a person of ordinary [] reason and firmness would have believed to be needed to prevent death or serious bodily injury.

The evidence showed that Victim immediately fell to the ground and remained motionless after Morris shot him the first time. It was apparent that Victim was not armed and was not a threat to Morris. Therefore, the trial court properly

removed the "continuing to shoot" language from the jury charge because the given charge adequately covered the elements of self-defense.

## 2.  Defense of Others

"Under the theory of defense of others, one is not guilty of taking the life of an assailant who assaults a friend, relative, or bystander if that friend, relative, or bystander would likewise have the right to take the life of the assailant in self-defense." *Douglas v. State*, 332 S.C. 67, 73, 504 S.E.2d 307, 310 (1998). "Consequently, in order for the trial court to give a defense of others charge, there must be some evidence adduced at trial that the defendant was indeed lawfully defending others." *Id.*  The evidence here did not warrant such a charge.

The record contains no evidence Victim assaulted or was about to assault Morris's girlfriend or her son.  The video of the shooting shows Victim did not look toward Morris's girlfriend or her son and he was not armed.  Victim began backing up when Morris approached him.  One witness stated Victim was in an apologetic posture before Morris shot him, and another witness noted Victim was trying to get away from Morris.  Morris challenged Victim by text to attack *him* by stating "you know where I'm at."  Further, Morris stated to Victim's father that he killed Victim because he introduced him to Pope, a confidential informant.  Therefore, because no evidence showed that Morris's girlfriend or son were in imminent danger, the trial court properly refused the defense of others charge.  *See State v. Long*, 325 S.C. 59, 64, 480 S.E.2d 62, 64 (1997) ("The testimony indicates [victim] was only angry with and threatened appellant with a baseball bat. . . . Accordingly, while appellant was entitled to and received a charge on self-defense, he was not entitled to a charge on defense of others."); *Bozeman v. State*, 307 S.C. 172, 176, 414 S.E.2d 144, 146 (1992) ("Petitioner and his brother testified at trial that, immediately preceding the shooting, the victim swung a knife at petitioner and *not* at petitioner's brother.  Clearly, the record supports a self-defense charge rather than a defense of others charge.") (emphasis in original).

## II.  Admission of Evidence

Morris argues the trial court erred in admitting an email from he sent while he was in the Greenville County Detention Center awaiting drug charges.  Morris stated in the email "that pu--- mother------ text messaged me threats, don't create chaos, the confidential informant is still alive, if you want to help you know what can be done."

"As a threshold matter, the trial judge must initially determine whether the proffered evidence is relevant as required under Rule 401 of the South Carolina Rules of Evidence." *State v. Rowland*, 444 S.C. 84, 100, 905 S.E.2d 825, 833 (Ct. App. 2024) (quoting *State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009)). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest [a] decision on an improper basis." *Rowland*, 444 S.C. at 101, 905 S.E.2d at 833–34 (alteration in original) (quoting *State v. Gilchrist*, 329 S.C. 621, 627, 496 S.E.2d 424, 427 (Ct. App. 1998)). "A [circuit court]' s decision regarding the comparative probative value and prejudicial effect of relevant evidence should be reversed only in exceptional circumstances." *Id.* (alteration in original) (quoting *State v. Sweat*, 362 S.C. 117, 129, 606 S.E.2d 508, 514 (Ct. App. 2004)).

Here, Morris argued at trial the email would confuse the jury because the email was not clear as to whom it referred. Morris seemed to argue that the email needed to be specific to warrant admission. However, the trial court correctly determined that it was the jury's province to decide what weight to give the email. The email was relevant because the record contains evidence that Morris believed Pope and Victim were confidential informants, Victim introduced Morris to Pope, and Morris consequently killed Victim. *See State v. Cheeseboro*, 346 S.C. 526, 548, 552 S.E.2d 300, 312 (2001) (defendant's letters were relevant to establish motive and identity).

Further, we note that the trial court's ruling was sufficient. The trial court clearly considered the relevancy and admissibility of the evidence. *See State v. King*, 349 S.C. 142, 156–57, 561 S.E.2d 640, 647 (Ct. App. 2002) (finding the trial court's brief discussion of the fairness of trial testimony without ever mentioning the Rule 403 balancing test was sufficient as "some indicia of [the court's] consideration of whether admission of the testimony was fair" and stating that a conviction should not be reversed "if the trial judge's comments concerning the matter indicate he was cognizant of the evidentiary rule when admitting the evidence"). Therefore, the trial court did not err in admitting the email.

**III. Sentence for Possession of a Weapon During the Commission of a Violent Crime**

Morris contends, and the State concedes, that the trial court erred in imposing a sentence for Morris's conviction for possession of a weapon during the commission of a violent crime. We agree.

A defendant who is convicted of possession of a weapon during the commission of a violent crime faces a mandatory five-year sentence "in addition to the punishment provided for the principal crime." S.C. Code Ann. § 16-23-490(A) (2015). However, the "five-year sentence does not apply in cases where . . . a life sentence without parole is imposed for the violent crime." *Id.* Therefore, although the issue was not raised below, the sentence is illegal and should be vacated pursuant to *State v. Plumer*, 439 S.C. 346, 351, 887 S.E.2d 134, 137 (2023) (holding that "when a trial court imposes what the State concedes is an illegal sentence, the appellate court may correct that sentence on direct appeal even if the defendant did not object to the sentence at trial and even if there is no real threat of incarceration beyond the limits of a legal sentence").

**CONCLUSION**

Based on the foregoing, we **AFFIRM** Morris's convictions and his sentence for murder and **VACATE** the sentence for possession of a weapon during the commission of a violent crime.

**AFFIRMED IN PART AND VACATED IN PART.**[1]

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.